OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



September 1, 1999

The Honorable Patrick B. Haggerty
Chair, Committee on Corrections
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0105

Re: Allocation of revenue by a municipality from hotel occupancy tax (RQ-0064)

Dear Representative Haggerty:

You ask this office to interpret two phrases in section 351.103 of the Tax Code, namely "consistent with the other limitations of this section" in section 351.103(b) and "the applicable provisions of this section" in section 351.103(e).

A brief description of the relevant provisions, and of the controversy which leads to your question, is necessary to place the question in context. Section 351.103 of the Tax Code reads in relevant part:

> (a) At least 50 percent of the hotel occupancy tax revenue collected by a municipality with a population of 200,000 or greater must be allocated for the purposes provided by Section 351.101(a)(3)
>
> . . . .
>
> (b) *Subsection (a) does not apply to a municipality* in a fiscal year of the municipality if the total amount of hotel occupancy tax collected by the municipality in the most recent calendar year that ends at least 90 days before the date the fiscal year begins exceeds $2 million. A municipality excepted from the application of Subsection (a) by this subsection shall allocate hotel occupancy tax revenue by ordinance, *consistent with the other limitations of this section* . . . .
>
> . . . .
>
> (e) A municipality may use hotel occupancy tax revenue collected by the municipality for a purpose provided by Section

>351.101(a)(1) only if the municipality *complies with the applicable provisions of this section.*

TEX. TAX CODE ANN. § 351.103 (Vernon 1992 & Supp. 1999) (emphasis added).

Section 351.101(a)(1) and section 351.101(a)(3), as referenced in section 351.103, provide that permissible uses for hotel occupancy tax revenue are "the acquisition of sites for and the construction, improvement, enlarging, equipping, repairing, operation, and maintenance of convention center facilities . . . ," *id.* § 351.101(a)(1) (Vernon Supp. 1999), and "advertising and conducting solicitations and promotional programs to attract tourists and convention delegates or registrants to the municipality or its vicinity." *Id.* § 351.101(a)(3). Pursuant to section 351.103(a), then, a municipality subject to it would have to spend at least 50 percent of hotel occupancy tax revenue on advertising and promotion of tourism and conventions.

The El Paso Hotel/Motel Association argues that the City of El Paso is required by section 351.103 to allocate 50 percent of its occupancy tax revenue to section 351.101(a)(3) purposes. *See* Letter from Henry P. King, Executive Director, El Paso Hotel/Motel Association, Inc., to Honorable Pat Haggerty, State Representative, District 78 (Apr. 15, 1999) (on file with Opinion Committee) [hereinafter King Letter of 4/15/99]. The City of El Paso, on the contrary, avers that it is exempted from the requirements of subsection (a) of section 351.103, and is not required to allocate the funds in that manner. *See* Letter from Myles S. Hall, Assistant City Attorney, City of El Paso, to Honorable John Cornyn, Attorney General (June 11, 1999) (on file with Opinion Committee) [hereinafter Hall Letter of 6/11/99]. In our view, the City's argument is correct.

We note as a preliminary matter that there appears to be general agreement that the City of El Paso meets the requirement of section 351.103(b) that its total hotel occupancy tax proceeds for the most recent calendar year exceed $2 million. *See* King Letter of 4/15/99 ("The City of El Paso collects about $4 million in Occupancy taxes annually."); Hall Letter of 6/11/99, at 3 ("The City of El Paso, Texas meets the criteria described in the first sentence of Subsection (b) of Texas Tax Code Section 351.103."). Our analysis, therefore, proceeds on this assumption.

You ask us first to interpret the phrase "consistent with the other limitations of this section." In the context of the sentence in section 351.103(b), the meaning of that phrase is clear and unambiguous: the "other limitations" are the limitations other than that of subsection (a), which limitation by the plain language of subsection (b) does not apply in the relevant case. Any other construction intended to include the subsection (a) restriction among the "other limitations" both violates the plain sense of subsection (b), and renders that subsection a nullity. We are charged, both by the maxims of construction generally and by sections 311.011 and 311.021 of the Code Construction Act, not to construe statutes in such a manner. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998) (words to be read in context and construed according to grammar and common usage); *id.* § 311.021(2) (entire statute intended to be effective).

You ask further about the meaning of the phrase "the applicable provisions of this section" in section 351.103(e), which requires a municipality that wishes to expend occupancy tax revenues on convention center facilities to comply with the applicable provisions of section 351.103. TEX. TAX CODE ANN. § 351.103(e) (Vernon Supp. 1999). Again the statutory language answers the question. By the statute's own terms, if a municipality takes in sufficient occupancy tax revenues in a calendar year, subsection (a) "does not apply" to it. *Id.* § 351.103(b) (Vernon 1992). For such a city, then, subsection (a) is not an applicable provision.

In short, if, as appears to be the case, the City of El Paso, Texas collected more than $2 million in hotel occupancy tax revenue in the most recent calendar year, it is not bound by the allocation formula of section 351.103(a) of the Texas Tax Code.

### S U M M A R Y

Pursuant to section 351.103(b) of the Texas Tax Code, the allocation restriction of section 351.103(a) of the Tax Code does not apply to a municipality which has collected in excess of $2 million in hotel occupancy tax revenue in the most recent calendar year.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General - Opinion Committee